jUNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

**PATRICK GRIFFIN,**

                **Plaintiff,**

v.                                                    9:16-CV-1291 (BKS/CFH)

**ERIC GUTWEIN and ALBERT PRACK,**
in their individual capacities,

                **Defendants.**

───────────────────────────────────────────────

**Appearances:**

**For Plaintiff:**
Matthew McGowan, Esq.
Prisoners' Legal Services of New York
41 State Street, Suite M112
Albany, New York 12207

**For Defendants:**
Eric T. Schneiderman
Attorney General of the State of New York
Helena Lynch, Assistant Attorney General
The Capitol
Albany, New York 12224

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

      Plaintiff Patrick Griffin, a New York State inmate, brings this action under 42 U.S.C. § 1983 against Defendants Eric Gutwein and Albert Prack, employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), asserting a single claim for denial of due process under the Fourteenth Amendment. (Dkt. No. 14). Currently pending before the Court is Defendants' motion to dismiss the Amended Complaint under Federal Rule

of Civil Procedure 12(b)(6), (Dkt. No. 17), which Plaintiff has opposed, (Dkt. No. 18). For the reasons that follow, Defendants' motion is denied.

## II.  BACKGROUND[1]

### A. The Alleged ILC Boycott

In early 2012, Plaintiff was an inmate incarcerated at Eastern New York Correctional Facility ("Eastern"). (Dkt. No. 14, ¶¶ 1, 9). At that time, Eastern's prison administration periodically held elections for the purpose of forming a body of inmate representatives to act as an Inmate Liaison Committee ("ILC"). (*Id.* ¶ 8). The purpose of the ILC was to "facilitate effective communications between prisoners and the administration and to facilitate consideration of suggestions from inmates regarding facility operations." (*Id.*). During January and February of 2012, however, the election process became stalled when "a number of nominees allegedly withdrew their names from consideration for ILC positions," and other inmates refused to run for those positions. (*Id.* ¶ 9). In response, the administration at Eastern initiated an investigation to determine whether inmates were engaging in an organized boycott of the ILC, and if so, which inmates were responsible. (*Id.* ¶¶ 9–11).

At that time, Plaintiff was the most senior disc jockey—or "Head DJ"—at Eastern, and was therefore responsible for making "periodic announcements to the inmate population via pre-recorded radio broadcasts that, per DOCCS policy, were subject to pre-approval and review by the facility staff." (*Id.* ¶ 13). Although Plaintiff was never a member of the ILC and had no interaction with the ILC aside from occasionally broadcasting election-related announcements, the administration identified Plaintiff as one of the "twelve inmate ringleaders" of the ILC boycott. (*Id.* ¶ 16). Plaintiff was placed in the Special Housing Unit ("SHU") at Eastern on May

---

[1] The facts are taken from the proposed Amended Complaint and assumed to be true for the purposes of this decision. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

2, 2012. (*Id.* ¶ 17). On May 4, 2012, Captain Ramirez, a corrections officer at Eastern, issued a misbehavior report charging Plaintiff with violating prison disciplinary rules regarding "violent conduct" and "demonstration." (*Id.* ¶ 18). The misbehavior report further alleged that that the administration's investigation into the ILC boycott revealed that Plaintiff was "instrumental in undermining the ILC election and nomination processes at Eastern by using the announcement system in the DJ Room to coerce other inmates to refrain from participating in the ILC voting process via intimidation and threats of harm." (*Id.* ¶ 19). The misbehavior report did not name the source of the information, indicating only that "confidential information" identified Plaintiff as a participant in the boycott. (*Id.* ¶ 20).

### B. Disciplinary Hearing and Appeal

Following Captain Ramirez's misbehavior report, Plaintiff's Tier III disciplinary hearing began on May 9, 2012. (Dkt. No. 14, ¶ 22). Defendant Eric Gutwein was the hearing officer assigned to preside over Plaintiff's hearing. (*Id.* ¶ 23). During the hearing, Plaintiff testified that the charges against him were false, and that he was being accused of organizing the ILC boycott scheme in retaliation for testifying at an earlier hearing—also before Defendant Gutwein—in support of the innocence of another inmate accused of organizing the boycott. (*Id.* ¶ 25). Plaintiff also testified that other inmates may have implicated him in the boycott in an attempt to "oust him from his coveted position . . . to create a vacancy for a new facility DJ." (*Id.* ¶ 27).

In opposition, Captain Ramirez testified that Plaintiff had used his position as Head DJ to use the prison announcement system to make threats against inmates "in various forms" regarding participation in the ILC election process. (*Id.* ¶¶ 28–31). Another corrections officer, however, testified that the administration's investigation of the ILC election boycott had concluded that the "DJ system was not being used as a means to promote an ILC boycott." (*Id.* ¶

3

32). The validity of that conclusion was supported by the fact that Captain Ramirez was unable to provide any specific information as to when or how Plaintiff used the announcement system to discourage other inmates from participating in the ILC process. (*Id.* ¶ 29, 31). Furthermore, although the allegation was not included in the misbehavior report, (*id.* ¶ 34), Captain Ramirez testified that another inmate reported overhearing Plaintiff state that anyone who participated in the ILC election process would "suffer consequences for their actions," (*id.* ¶ 35). Captain Ramirez indicated that the "confidential information against plaintiff identified [Plaintiff] by his name, locking location, program assignment, and Department Identification Number" ("DIN"). (*Id.* ¶ 36). This information, however, was openly posted in two areas of the prison, and was therefore "meaningless for purposes of assessing [the] credibility and reliability" of the confidential informant. (*Id.* ¶¶ 37–38).

Nevertheless, on June 28, 2012, Defendant Gutwein found Plaintiff guilty of the charges in the misbehavior report, and imposed a penalty of twenty-four months' confinement in SHU, twenty-four months' loss of package, commissary, and phone privileges, and a recommendation for twenty-four months' loss of good-time credit. (*Id.* ¶ 47). Although the hearing record contained additional confidential information that "[n]either plaintiff nor plaintiff's counsel has been permitted to view," (*id.* ¶ 41), the non-confidential remainder of the "record is either exculpatory or a mere summary of the confidential information." (*Id.* ¶ 44). Plaintiff believes that because Defendant Gutwein "failed to independently and adequately assess the reliability of such confidential information," the hearing disposition was therefore "rendered without some reliable evidence of plaintiff's guilt." (*Id.* ¶¶ 45–46).

On or about July 15, 2012, Plaintiff was transferred from the SHU at Eastern to the SHU at Upstate Correctional Facility ("Upstate"). (*Id.* ¶ 61). On July 24, 2012, Plaintiff submitted his

*pro se* appeal of the disciplinary hearing to Defendant Albert Prack, the Director of Special Housing and Inmate Discipline at DOCCS. (*Id*. ¶ 48). On September 17, 2012, Plaintiff submitted a second administrative appeal with the assistance of counsel. (Dkt. No. 14, ¶ 49). On October 22, 2012, Defendant Prack modified the penalty to twelve months of confinement in SHU, twelve months' loss of package, commissary, and phone privileges, and a recommendation for twelve months' loss of good time credit. (*Id.* ¶ 51). Plaintiff then filed an Article 78 proceeding on November 1, 2012 in New York state court, challenging "the disposition of the hearing, as administratively modified, on the ground . . . that it was not supported by substantial evidence of guilt." (*Id.* ¶ 53). Plaintiff, having "received a discretionary time cut that allowed him to complete his SHU penalty," was released form SHU on February 19, 2013 while his Article 78 proceeding was still pending. (*Id.* ¶ 55). On January 21, 2014, DOCCS "administratively reversed and expunged plaintiff's hearing disposition," (*id.* ¶ 56), and Plaintiff's Article 78 proceeding was dismissed as moot on April 24, 2014, (*id.* ¶ 57).

### C. Conditions of Plaintiff's Confinement

Altogether, Plaintiff was confined to SHU for a total of 293 days. (*Id.* ¶ 59). Beginning on May 2, 2012 until July 15, 2012, he was housed in the SHU at Eastern. (*Id.* ¶¶ 59–61). From July 15, 2012 until February 19, 2013, Plaintiff was housed at the SHU at Upstate. "Unlike the Special Housing Units at many other DOCCS facilities," SHU cells at Upstate are double-occupancy. (*Id.* ¶ 68). Plaintiff feared that he could be punished "on the basis of any contraband that his cellmate introduced into their shared cell," (*id.* ¶ 71), and experienced stress and difficulty sleeping because of the "prospect of being physically or sexually assaulted by his cellmate," (*id.* ¶ 73). Plaintiff's anxiety and difficulty sleeping has persisted since he was released from confinement in SHU, and continues into the present. (*Id.* ¶¶ 74, 77). While in

SHU, Plaintiff also feared that "security staff was tampering with his meals to retaliate against his cellmate for disagreements between the cellmate and the officers in the unit." (*Id.* ¶ 78). As a result, Plaintiff limited "his food intake to those items he thought to be least susceptible to intentional contamination," and his weight dropped from approximately 180 to 147 pounds during his time in SHU. (*Id.* ¶¶ 79, 81). Additionally, when Plaintiff reported blood in his stool to medical staff, they "advised plaintiff that he had no medical abnormalities and threatened to charge him with misbehavior if he again sought treatment." (*Id.* ¶¶ 82–83). Plaintiff was later diagnosed with a hernia, which required surgical treatment. (*Id.* ¶ 85). Plaintiff also suffered psychological stress from the unhygienic conditions in the SHU at Upstate, where he was provided with stained bed linens and, on one occasion, endured "hours of lingering odor" after another inmate "threw feces from a cell into the hallway of the housing unit on a 90-degree summer day." (*Id.* ¶¶ 87–88).

Furthermore, the Upstate facility is located approximately 240 miles farther away from Plaintiff's wife and children, who live in the Bronx, New York. (*Id.* ¶¶ 62–63). This additional distance "limited plaintiff's opportunities to receive family visits" and "undermined his ability to maintain a positive relationship with his family." (*Id.* ¶¶ 64–65). When his family came to visit, "the shame that plaintiff felt from being forced to interact with his young sons via dehumanizing non-contact SHU visits further damaged his relationships." (*Id.* ¶ 66).

Thus, Plaintiff believes that "[t]he totality of the conditions that Plaintiff endured during his 293 days in SHU were thus different from and more burdensome than ordinary SHU confinement and comprised an atypical and significant hardship." (*Id.* ¶ 89).

**III.   STANDARD OF REVIEW**

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 U.S. Dist. LEXIS 155140, at *5, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

**IV.   DISCUSSION**

   **A.   Rule 12(b)(6)—Failure to State a Denial of Due Process Claim**

Although it is well-settled law that prison inmates retain due process rights during prison disciplinary proceedings, *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003), inmates are not provided the "full panoply of rights" accorded to defendants in criminal prosecutions, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). For an inmate to sufficiently state a claim that "he was denied due process at a disciplinary hearing, the plaintiff 'must establish (1) that he possessed a

7

liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process.'" *McAllister v. Call*, No. 10-CV-610 (FJS/CFH), 2014 U.S. Dist. LEXIS 154422, at *21, 2014 WL 4801521, at *9 (N.D.N.Y. Oct. 9, 2014) (quoting *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004)).

Defendant moves to dismiss the denial of due process claim on the grounds that Plaintiff fails to adequately state a claim for denial of due process because the Amended Complaint (i) "does not state a liberty interest because he does not demonstrate that the conditions of his confinement were more severe" than those typical of SHU and (ii) indicates that there was "some evidence" in support of Gutwein's finding that Plaintiff was guilty. (Dkt. No. 17-1, at 8–19). In response, Plaintiff suggests that (i) the record is insufficiently developed to make a determination as to the atypicality and severity of the conditions of his confinement and (ii) the "some evidence" standard upon which Defendant's argument depends also requires that the evidence in question possess some indicia of reliability. (Dkt. No. 18, at 14–25). For the following reasons, the Court agrees with Plaintiff.

### i. Liberty Interest

"Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "To determine whether an inmate has suffered 'atypical and significant hardship,'" the conditions imposed upon the inmate must be compared to those imposed on the rest of the general population of the facility as well as those in administrative and protective confinement." *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 605 (S.D.N.Y. 2009). In evaluating the severity of the hardship imposed, a district court must consider both the duration and conditions of the confinement, "since especially harsh conditions

endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealy v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).

The Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Generally, courts have found that periods of confinement in SHU lasting fewer than 101 days do not, considered alone, amount to atypical and significant hardship. *See Sealy*, 197 F.3d at 588–90 (finding that 101 days "not an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Ortiz*, 380 F.3d at 655 (finding that conditions such as "solitary confinement for twenty-three hours a day" and "two showers per week" for fewer than 101 days does not constitute atypical and significant hardship). On the other hand, periods of 305 days or more have been found to be both atypical and significant even without further consideration of severity of conditions. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (finding that 305 days of SHU confinement was "a sufficient departure from the ordinary incidents of prison life to require procedural due process"). In instances where the duration of confinement lasted between 101 and 305 days, the "Second Circuit has remanded cases to the district courts instructing them to establish a detailed record regarding the harshness of the confinement." *Dawkins*, 646 F. Supp. 2d at 606 (citing *Howard*, 215 F.3d at 232, and *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000)).

"Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64–65 (internal quotation marks omitted); *see also Sims*, 230 F.3d at 23 (characterizing periods of SHU confinement as "relatively long, and thus necessitating specific articulation of . . . factual findings before the district court could

properly term the confinement atypical or insignificant"). At the higher end of the range, Plaintiff's 293-day confinement in SHU[2] is of the sort that requires thorough examination of a developed record of his particular conditions of confinement before a court is able to determine whether he possessed a liberty interest. Plaintiff has already alleged facts indicating that conditions in SHU at Upstate were significantly different than those he would have been exposed to in general population, that conditions at Upstate were atypically severe compared to other SHU facilities in other prisons, and that he suffered stress, anxiety, and weight loss as a result. (Dkt. No. 14, ¶¶ 59–90). For example, he alleges that he was confined with another inmate for twenty-four hours per day in unhygienic conditions, deprived of sleep, and deprived of adequate access to medical treatment. (*Id.*) Even if he had not included such allegations of atypicality and severity, "[f]or such a duration of confinement, the fact-finding required by the Second Circuit to determine whether this intermediate sentence constitutes an atypical and significant hardship cannot occur on a motion to dismiss." *Koehl v. Bernstein*, No. 10-cv-3808, 2011 U.S. Dist. LEXIS 64466, at *21, 2011 WL 2436817, * 7 (S.D.N.Y. June 17, 2011); *see also Smart v. Goord*, 441 F. Supp. 2d 631, 640–41 (S.D.N.Y. 2006) ("Whether [plaintiff's] seventy-day confinement constitutes an 'atypical and significant hardship' . . . presents a closer question, but [plaintiff's] allegations in this regard are sufficient to withstand a motion to dismiss."); *Thomas v. Calero*, 824 F. Supp. 2d 488, 501 (S.D.N.Y. 2011) (finding that even where plaintiff had "not alleged that the conditions of his confinement differed from normal SHU circumstances," his "confinement in SHU for 291 days [was] sufficient, for pleading purposes"). Accordingly, Plaintiff has sufficiently pled the deprivation of a protected liberty interest.

---

[2] Courts consider the "penalty . . . actually imposed" rather than the maximum potential duration of the penalty handed down at the conclusion of the disciplinary proceeding when determining whether the prisoner had a liberty interest at stake. *Scott v. Albury*, 156 F.3d 283, 285 (2d Cir. 1998).

### ii. "Some Evidence" Standard

In the prison disciplinary context, due process "only requires that a prison disciplinary board's decision be 'supported by some evidence in the record.'" *Bullock v. Reckenwald*, No. 15cv5255 (LTS) (DF), 2016 U.S. Dist. LEXIS 114253, at *44, 2016 WL 5793974 (S.D.N.Y. Aug. 24, 2016) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). The Second Circuit, however, has held that the question is not whether there was "'any evidence' that 'could' support the disciplinary decision," but "whether there was 'reliable evidence' of the inmate's guilt." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004); *see also Dawkins*, 646 F. Supp. 2d at 611 (denying motion to dismiss where the record did not "provide adequate indication of a proper assessment of the reliability of any confidential informants"). In determining whether evidence provided by a confidential informant in the prison disciplinary context can be considered "reliable," a court must examine whether the hearing officer conducted "an independent assessment of the informant credibility." *Sira v. Morton*, 380 F.3d 57, 77 (2d Cir. 2004). Without any indication that the hearing officer performed "some examination of indicia relevant to an informant's credibility," it cannot determine whether such information is reliable. *Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir. 1996).

For example, in *Taylor v. Rodriguez*, the Second Circuit held that the "some evidence" standard was not met where the hearing officer found an inmate guilty based solely on information provided by a non-testifying confidential informant without engaging in "some examination of indicia relevant to [the] informant's credibility." 238 F.3d 188, 194 (2d Cir. 2001). Conversely, the Second Circuit determined that the standard *was* met where the corrections officer who received the confidential, incriminating information testified to his conversation with the informant, described factors used in assessing the informant's credibility,

11

and assessed whether the "informant . . . had served as a confidential informant in the past." *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001).

In this case, the only evidence alleged to have been presented against Plaintiff that was not directly contradicted by the testimony of another corrections officer (e.g., that Plaintiff had used the announcement system to threaten other inmates) was Captain Ramirez's testimony, based on confidential information, that Plaintiff "had been overheard in the yard telling others to boycott the election." (Dkt. No. 14, ¶¶ 28–36). Furthermore, the only information alleged that corroborated the informant's statement was information regarding Plaintiff's identity, such as his "name, locking location, program assignment," and DIN—all of which were openly posted and available to every inmate and staff member at Eastern. (*Id.* ¶¶ 36–37). "Corroboration of facts generally known or easily obtained," however, "do not necessarily establish a source's reliability with respect to other incriminating matters." *Sira*, 380 F.3d at 79.

It is unknown, at this point, whether Defendant Gutwein independently assessed the reliability of the confidential information upon which Plaintiff was found guilty. In particular, it is unknown whether Defendant Gutwein interviewed the informant, what factors he used in assessing the credibility of the information, whether the informant had a history of providing reliable information, or whether the information was based on the informant's personal knowledge or on communications from others. Accordingly, at this early stage of litigation, Defendant's motion to dismiss on this ground must be denied.

### B. Statute of Limitations

Defendant moves to dismiss on the basis that, because Plaintiff's claim accrued on the date that Defendant Gutwein issued his disciplinary decision on June 28, 2012, it is barred by the statute of limitations. (Dkt. No. 17, at 13). In response, Plaintiff argues that, because of the

favorable termination rule established by *Heck v. Humphrey*, 512 U.S. 477 (1994), his claim could not have accrued until it was reversed and expunged by DOCCS on January 21, 2014. (Dkt. No. 18, at 7). For the reasons set forth below, the Court agrees with Plaintiff.

As an initial matter, "Section 1983 provides a federal cause of action," but to determine the applicable statute of limitations, "federal law looks to the law of the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("In section 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions.'" (alterations omitted) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989))). "New York's three year statute of limitations . . . governs § 1983 actions brought in federal district court in New York." *Jewell v. Cty. of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990). Conversely, the "accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. at 388; *see also Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015). Typically, "[t]he statute of limitations for a Section 1983 claim begins to run 'when the plaintiff knows or has reason to know of the harm.'" *Harper v. City of N.Y.*, 424 F. App'x 36, 39 (2d Cir. 2011) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

An exception to this general rule, however, is set forth by *Heck v. Humphrey* and applies where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. Under such circumstances, including in the context of a prison disciplinary proceeding, an inmate's claim does "not accrue until he succeed[s] in having [his] disciplinary ruling reversed by the state court." *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996). In *Edwards v. Balisok*, the Supreme Court clarified that *Heck*'s bar applies regardless of whether a plaintiff seeks "damages for depriving him of good-time credits *without*

13

*due process*," rather than "for depriving him of good-time credits *undeservedly* as a substantive matter." 520 U.S. 641, 645 (1997). The Second Circuit subsequently limited the scope of its holding in *Black* and held that a "1983 suit by a prisoner . . . challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred by *Heck* and *Edwards*." *Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999). *Heck* and *Black* therefore require that, before an inmate is able to bring a denial of due process claim regarding a disciplinary hearing that had some bearing on the duration of his sentence, he must first attain a favorable termination of that hearing. *Id.* at 28.

Defendant points to *Davis v. Jackson*, No. 15-cv-5359, 2016 U.S. Dist. LEXIS 136034, 2016 WL 5720811 (S.D.N.Y. Sept. 30, 2016), to argue that recently, courts within the Second Circuit have held that *Heck* and *Edwards* "have not . . . established a bright-line approach to when due process claims accrue in prison as one might expect." *Davis*, however, relied heavily on Justice Ginsburg's concurrence in *Edwards*, which posits only that some allegations of insufficient due process may not "necessarily imply the invalidity of the deprivation of [the disciplinary ruling]," and would therefore be "immediately cognizable under § 1983." 520 U.S. at 650. For example, the *Edwards* concurrence indicates that, while "allegations of deceit and bias on the part of the decision maker" would necessarily imply the invalidity of the deprivation (and thus trigger *Heck's* favorable termination requirement), less significant defects, "including the failure . . . to specify what facts and evidence supported the finding of guilt," would not. *Id.* at 649–50. In *Davis*, the court found that the procedural defect alleged resembled the latter. *Davis*, 2016 U.S. Dist. LEXIS 136034, at *7, 2016 WL 5720811, *2.

Here, however, Plaintiff's alleges that, because all of the non-confidential information presented against him was exculpatory, Defendant Gutwein's decision was not supported by

14

reliable evidence of guilt. (Dkt. No. 14, ¶ 91). Like allegations of "deceit and bias on the part of the decision maker," Plaintiff's claim necessarily implies the invalidity of the disciplinary hearing in its entirety. *Edwards*, 520 U.S. at 649. Accordingly, Plaintiff's due process claim falls squarely within the bounds of *Heck*, and did not accrue until Plaintiff received a favorable termination of the disciplinary hearing. Thus, according to the allegations in the Amended Complaint, the statute of limitations in this case would have expired on January 21, 2017, and Plaintiff's claim, initially filed on October 27, 2016, is timely.[3] *See Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999) ("[T]he survival of a Rule 12(b)(6) motion to dismiss on statute of limitations grounds requires only allegations consistent with a claim that would not be time-barred.").

### C. Qualified Immunity

"A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (per curiam). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011) (internal quotations and markings omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, to determine whether the right was "clearly established," "the salient question . . . is whether the state of the law [when the incident occurred] gave [the defendant] fair warning that [his] alleged treatment [of plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Furthermore, when a defendant raises a qualified immunity

---

[3] The Court notes that, because Plaintiff's Amended Complaint filed on March 9, 2017 asserts claims that "arose out of the conduct . . . set out . . . in the original pleading" filed on October 27, 2016, the Amended Complaint relates back to the original filing date for the purpose of this analysis. Fed. R. Civ. P. 15(c)(1)(B).

15

defense at the motion to dismiss stage, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The Second Circuit has incorporated "into administrative segregation hearings the requirement that a hearing officer independently assess the reliability of a confidential informant." *Davis v. Barrett*, No. 02-CV-0545(Sr), 2011 U.S. Dist. LEXIS 64023, at *10, 2011 WL 2421109, at *4 (W.D.N.Y. June 13, 2011).  Thus, it is "clearly established that an independent assessment is necessary to satisfy the 'some evidence' standard when a disciplinary decision is based solely on confidential information." *Dawkins*, 646 F. Supp. 2d at 614.  As described above, the record is insufficiently developed to determine whether Defendant Gutwein based his finding of Plaintiff's guilt on information provided by a confidential informant without engaging in "some examination of indicia relevant to [the] informant's credibility." *Giakoumelos*, 88 F.3d at 61.  Thus, at this early stage of the litigation, the Court is unable to make a determination as to whether Defendant Gutwein is entitled to qualified immunity.  *See Edrei v. City of New York*, 254 F. Supp. 3d 565, 582 (S.D.N.Y. 2017) ("At this early stage and 'without a factual resolution . . . it is not possible to determine whether defendants are qualifiedly immune,' making it inappropriate to dismiss the claim." (quoting *Jones v. Parmley*, 465 F.3d 46, 64 (2d Cir. 2006))); *Maloney v. County of Nassau*, 623 F. Supp. 2d 277, 292 (E.D.N.Y. 2007) (noting that, because it "necessarily involves a fact-specific inquiry," the defense of qualified immunity "is generally premature to address . . . in a motion to dismiss")

With regard to Defendant Planck, "courts in this circuit disagree over whether the failure to remedy a wrong after being informed of a constitutional violation through a report or appeal remains sufficient to establish a supervisor's personal involvement in a constitutional violation."

16

*Richardson v. Williams*, No. 15 CV 4117 (VB), 2016 U.S. Dist. LEXIS 138438, at *8, 2016 WL 5818608, at *3 (S.D.N.Y. Oct. 5, 2016).  Thus, at the time Defendant Prack denied Plaintiff's appeal, it was unclear "whether an appeal officer may be held liable for failing to reverse the outcome of an allegedly unconstitutional disciplinary hearing." *Lebron v. Mrzyglod*, No. 14-CV-10290 (KMK), 2017 U.S. Dist. LEXIS 9751, at *25, 2017 WL 365493, at *8 (S.D.N.Y. Jan. 23, 2017); *Richardson*, 2016 U.S. Dist. LEXIS 138438, at *8, 2016 WL 5818608 at *3.  Because it was not "clearly established . . . whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted," *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009) (citation omitted), Prack is entitled to qualified immunity.  Accordingly, Plaintiff's due process claim against Defendant Prack must be dismissed.

## V.   CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 17) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's claim against Defendant Prack is **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 17) is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated:  January 31, 2018
        Syracuse, NY

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge